## * * § 362 INFORMATION SHEET * *

MARGARET A. RIES  
**DEBTOR**  
JOSEPH POLLOCK  
**MOVANT**

Case No: 11-51536  
CHAPTER: 13

MOTION #:

### Certification of Attempt to Resolve the Matter Without Court Action:
*Moving counsel hereby certifies that pursuant to the requirements of LR 4001(a)(3), an attempt has been made to resolve the matter without court action, but movant has been unable to do so.*  
Date: 6/21/2011   Signature: *[signature]*  
Attorney for Movant

PROPERTY INVOLVED IN THIS MOTION: 1401 WESLEY DRIVE, RENO, NV 89503  
NOTICE SERVED ON: Debtor(s) ✓ ; Debtor's counsel ✓ ; Trustee ✓ ;  
DATE OF SERVICE: 6/21/2011

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS: | The EXTENT and PRIORITY of LIENS: |
| 1st 46,238.00 | 1st 46,238.00 |
| 2nd 52,966.00 | 2nd |
| 3rd | 3rd |
| 4th | 4th |
| Other: | Other: |
| Total Encumbrances: $99,204.00 | Total Encumbrances: 46,238.00 |
| APPRAISAL of OPINION as to VALUE: $115,000.00 | APPRAISAL of OPINION as to VALUE: $115,000.00 |
| **TERMS of MOVANT'S CONTRACT with the DEBTOR(S):** | DEBTOR'S OFFER of "ADEQUATE PROTECTION" for MOVANT . |
| Amount of Note: 52,966.00 | . |
| Interest Rate: legal rate from Jan.1, 2012 | . |
| Duration: due by June 1, 2016 | . |
| Payment per Month: | . |
| Date of Default: | . |
| Amount in Arrears: | . |
| Date of Notice of Default: | . |
| SPECIAL CIRCUMSTANCES: | SPECIAL CIRCUMSTANCES: |
| SUBMITTED BY *[signature]* | SUBMITTED BY: |
|  | SIGNATURE: |

MLS-Sec-362-Inf-12-00.wpd (District of Nevada)                    "EXHIBIT A"

LAW OFFICES OF AMY N. TIRRE,  
A Professional Corporation  
AMY N. TIRRE, ESQ.  #6523  
3715 Lakeside Drive, Suite A  
Reno, NV 89509  
(775) 828-0909 Telephone  
(775) 828-0914 Facsimile  
E-mail: amy@amytirrelaw.com  

E-Filed:  June 21, 2011

Counsel for Joe Pollock

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>MARGARET A. RIES,<br><br>Debtor. | Case No. BK-N-11-51536-BTB<br><br>Chapter 13<br><br>**MOTION FOR RELIEF FROM THE AUTOMATIC STAY, OR, IN THE ALTERNATIVE, TO ABSTAIN**<br><br>Hearing Date:  July 19, 2011<br>Hearing Time:  10:00 a.m.<br>Est. Hearing:  15 minutes |

Joe Pollock ("Pollock"), by and through counsel, Law Offices of Amy N. Tirre, A Professional Corporation, seeks relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) for cause on the ground that Margaret A. Ries ("Debtor" or "Ries") has failed to comply with a state court order requiring her to execute a promissory note and deed of trust against the real property located at 1401 Wesley Drive, Reno, Nevada to secure a $52,966 debt to Pollock and now seeks to classify this debt as an "unsecured loan" and discharge it.  In the alternative, Pollock requests this Court to abstain from adjudicating Pollock's right and interest in the real property pursuant to 28 U.S.C. §1334(c)(1).   This motion is made pursuant to 11 U.S.C. §362(d)(1), 28 U.S.C. §1334(c)(1), Fed.R.Bankr.P. 4001 and 9014, and LR 4001 and based upon the following points and authorities, the concurrently-filed Declaration of Joe Pollock ("Pollock Declaration") with its attached exhibits, the pleadings and papers on file herein and the arguments of counsel at a hearing on this matter.

-1-

# POINTS AND AUTHORITIES

## FACTS & PROCEDURAL HISTORY

Pollock and Debtor were husband and wife. On December 30, 2009, the Second Judicial District Court entered its Findings of Fact, Conclusions of Law and Decree of Divorce ("Decree"). A copy of the Decree is attached to the Pollock Declaration as **Exhibit A**. Attached as Exhibit 1 to the Decree is the Marital Settlement Agreement, dated December 4, 2009 ("MSA"); the MSA is "merged, ratified, confirmed and incorporated" into the Decree. See Decree at ¶3:25-26. The MSA provides in Section II for the "Partition of Community Assets and Liabilities and Attorney's Fees and Other Related Matters." Under the MSA, the parties agreed who received what property subject to what conditions. Debtor was to receive the marital residence located at 1401 Wesley Drive, Reno, NV 89503 ("the Property"), which the parties had owned as husband and wife, joint tenants with right of survivorship, subject to certain terms requiring her to refinance the Property and if she did not do so, she is required to sell the Property in order to pay Pollock. Section II, Paragraph 1 of the MSA provides in pertinent part:

> Husband shall receive the real property on Sylvester Road. Husband shall refinance the property to remove Wife's name from the debt within 30 days after Wife satisfies in full her equalizing payment to Husband. Wife shall prepare and execute the quitclaim deed to said property to Husband forthwith. Wife shall receive the property on Wesley Drive, subject to the following terms: (1) Wife shall seek to obtain financing from her father to immediately pay the full equalizing payment, $52,966, to Husband, or (2) Wife shall use good faith and best efforts to immediately refinance the property to pay the full equalizing payment, $52,966, to Husband, or, (3) if Wife is unable to implement the refinancing described in (1) and (2) herein, Wife shall refinance the Wesley Drive property to remove Husband's name from the debt and pay Husband $30,000 of the equalizing payment, without interest, no later than January 1, 2012; Wife shall pay the then outstanding balance of the equalizing payment to Husband, with interest at the legal rate compounded monthly from January 1, 2012, no later than June 1, 2016. Should Wife be unable to satisfy the equalizing payment to Husband by June 1, 2016, Wife shall then immediately sell the Wesley Drive home, listed at a price designed to sell the house immediately, and from the proceeds, pay the balance of the equalizing payment then owed to Husband. Proceeds from the sale or refinance of Wesley

> Drive property shall be applied first to satisfy the equalizing payment owed to Husband as set forth herein below in Section 3. Should Wife sell the Wesley Drive property within two (2) years such that capital gains is owed, Wife shall assume said capital gain tax liability and shall be entitled to apply 1/2 of said capital gain tax liability amount to the payment of the equalizing payment owed to Husband set forth in section 3 herein below. Wife shall prepare and Husband shall execute the quitclaim deed to the Wesley Drive property forthwith.

MSA at 4. Under the foregoing provision, Debtor was to obtain financing immediately (December 2009) to pay $52,966 to Pollock whether from her father or a third-party; and if she was unable to do so, she was required to pay $30,000 to Pollock by January 12, 2012 and the balance, with interest at the legal rate compounded monthly from January 1, 2012, no later than June 1, 2016.

In Section II, Paragraph 3 of the MSA, the parties agree that Debtor owes an equalizing payment of $52,966 to Pollock and that Debtor *shall* execute a promissory note, secured by a deed of trust against the Property:

> Wife owes to Husband an equalizing payment of $52,966, the terms of which are set forth in section 1 herein above. Wife shall execute a promissory note, secured by a deed of trust to the property at 1401 Wesley Drive, in favor of Husband in the amount of $52,966, in the terms set forth in section 1 herein above. Additionally, Wife shall maintain, at her cost, a life insurance policy on her life for the amount owed on the promissory note with Husband as the irrevocable beneficiary until such time as the equalizing payment is satisfied in full.

MSA at 5. Thus, in order to protect Pollock's interest and provide collateral to secure the obligation, the Court ordered Debtor to execute a note and deed of trust against the Property. Debtor failed to do so in violation of the Decree. Pollock Declaration at ¶7.

In Section III, Paragraph 3 of the MSA, the parties agreed that if either party failed to pay the other or discharged a debt to the other through bankruptcy, the family court retained jurisdiction to enforce the Decree and could award alimony:

> The parties intend and agree that should Wife fail to pay the debt set aside to her in the instant Agreement, including but not limited to equalizing payment to Husband, taxes, any debt incurred after the Agreement or any debt for which she is responsible but for which a creditor should seek payment from Husband, the Court shall increase alimony to Husband in an amount sufficient to pay said debt and all costs and expenses associated with collection and payment of said debt, including but not limited to payment of attorneys fees and costs. The Court shall

-3-

> consider the fact of Wife's income post-bankruptcy. The parties further intend and agree that should Wife discharge any obligations or debt in bankruptcy for which Husband may be jointly and/or severally liable, including but not limited to tax liability, the Court shall increase alimony in an amount sufficient for Husband to at least pay said debt and all costs and expenses associated with collection and payment of said debt, including but not limited to payment of attorneys fees and costs.
>
> With respect to this provision, the parties agree the court shall retain jurisdiction over the property of the divorce to ensure that neither party is damaged or required to incur debt due to the bankruptcy of the other.

MSA at 8-9.

According to the foregoing provision, if Debtor seeks to damage Pollock through a bankruptcy discharge, the Second Judicial District Court specifically retained jurisdiction over the property of the divorce.

Debtor failed to refinance the Property and pay Pollock. Pollock Declaration at ¶6. Debtor has failed to pay Pollock anything toward this debt. *Id.* In violation of the Decree, Debtor failed to execute a note and deed of trust to secure the $52,966 debt that she owes to Pollock. Pollock Declaration at ¶7. Had it been executed and recorded, it would be a second deed of trust against the Property. *Id.* There is a first deed of trust against the Property in favor of Chase Bank with an approximate balance of $46,238. Debtor estimates the value of the Property to be $115,000. See Docket No. 1 at Schedule A. Accordingly, there is approximately $68,000 in value in the Property available to fully secure the $52,966 debt to Pollock. Pollock Declaration at ¶7.

Pollock points out that Debtor is not the sole owner of the Property. On the same date that Debtor and Pollock executed the MSA, they also executed a deed to the Property conveying it from themselves as husband and wife to themselves as tenants in common. Pollock Declaration at ¶8. A copy of this Grant, Bargain and Sale Deed is attached to the Pollock Declaration as Exhibit B. It was recorded in the official records of the Washoe County Recorder on February 18, 2010 as Document No. 3850579. It is Pollock's understanding that this deed was prepared and recorded to protect the parties in the event that either passed away before all of their respective obligations under the MSA had been performed. Pollock Declaration at ¶8.

In Section IV, Paragraph 8(C) of the MSA, the family court provided for the execution of

-4-

documents by the clerk in the event either party failed to execute documents as required in the MSA:

> Such other and further documents as may be necessary from the intents, objectives, designs and requirements of this Agreement, or other collateral documents, agreements or contracts executed as part of this Agreement. Should either party fail to execute documents as may be requested and be necessary to transfer ownership as set forth herein, the other party may, upon three days written notice, obtain a Clerk's entry for the transfer of said property, from the Second Judicial District Court in and for the County of Washoe, for both real and personal property and without the requirement of filing a motion for clerk's entry.

MSA at 11.

On May 8, 2011, Debtor filed for relief under Chapter 13 of Title 11 of the United States Code. According to her Form 22(c), Debtor's income falls below the median for her family size and she is eligible to file for relief under Chapter 7, but opted to file for relief under Chapter 13 in order to discharge the debt to Pollock. *See* Docket No. 8, Chapter 13 Statement of Current Monthly Income and Calculation of Commitment and Disposable Income. On Debtor's Schedule F, she identifies the debt to Pollock as an unsecured "personal loan" in the amount of $52,000. See Docket No. 1 at 18. In her Chapter 13 Plan, Debtor proposes to pay $150 for 36 months for a total of $5,400 of which $2,086 will go to pay unsecured claims. See Docket No. 2. Pollock's $52,966 claim is approximately 47% of the total amount of unsecured claims, which is $112,459. See Docket No. 1 at 18-19. Debtor has four credit card debts that make up the balance.

## ARGUMENT

**I.    CAUSE EXISTS FOR RELIEF FROM THE AUTOMATIC STAY TO PERMIT THE FAMILY COURT TO ENFORCE THE DECREE**

Section 362(d)(1) of the Bankruptcy Court provide the following grounds for stay relief:

> (d)    On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as terminating, annulling, modifying, or conditioning such stay:

-5-

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

A party-in-interest is entitled to relief from the automatic stay for cause. 11 U.S.C. §362(d)(1). The Code does not define "cause" and, therefore, discretionary relief from the stay must be determined on a case-by-case basis. *In re Beguelin,* 220 B.R. 94, 97 -98 (9th Cir. BAP 1998) (citing *In re Tucson Estates, Inc.,* 912 F.2d 1162, 1166 (9th Cir.1990)).

Under Chapter 13, a debtor receives a discharge of debts that fall under the 11 U.S.C. §523(a)(15), which are defined as debts "to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph 5 that is incurred by the debtor in . . . in connection with a divorce decree." 11 U.S.C. §1328(a)(2) (identifying the debts under 523(a) that are not excepted from discharge from a Chapter 13 discharge and omitting (a)(15). Section 523(a)(15) debts are, however, not discharged in Chapter 7. 11 U.S.C. §523(a).

Here, Debtor is seeking to profit from her own violation of a family court order by seeking to discharge the debt owed to her former spouse as an unsecured debt under Section 523(a)(15) when this debt should have been fully-secured by a second deed of trust against the Property. She should not be permitted to profit from her own wrongdoing. It is inequitable and an abuse of process, which this Court should not permit. 11 U.S.C. §105(a). She has created the circumstance which makes Pollock's claim vulnerable to a Chapter 13 discharge. Had she executed the note and deed of trust as required by the Decree, Pollock would be secured by a second deed of trust against the Property and his secured claim would be unaffected by the Chapter 13 discharge. If Pollock were secured by a second deed of trust as the parties intended under the MSA and as the family court ordered, perhaps Debtor would have filed a Chapter 7 instead of a Chapter 13 in order discharge the approximate $60,000 of credit card debt that she owes.

-6-

Debtor should not be permitted to violate a court order and then take advantage of her wrongdoing to the detriment of Pollock. Pollock submits that cause exists for relief from the automatic stay to bring this matter back before the Second Judicial District Court so that it can enforce its Decree and a deed of trust can be recorded against the Property in accordance with the Decree. Pollock seeks relief from the automatic stay so that this matter can be brought back before the Second Judicial District Court so it can take any and all actions necessary to enforce its Decree, including, but not limited to: (1) compelling Debtor to execute a note and deed of trust in favor Pollock for the $52,966, which deed of trust can then be immediately recorded against the Property notwithstanding the stay; (2) having the Clerk execute a note and deed of trust in favor Pollock for the $52,966 in accordance with Section IV, Paragraph 8(C) of the Decree, which deed of trust can then be recorded against the Property notwithstanding the stay; (3) allowing Pollock, as a co-owner, to commence a partition action against the Property so that it can be sold and he can be paid; (4) modifying the Decree to require Debtor to pay alimony to Pollock in accordance with Section III, Paragraph 3 of the Decree.

Pollock further points out that this Court's granting of relief from the automatic stay to enforce the Decree has no impact on the unsecured creditors of Debtor's estate. Presumably, Debtor will claim any equity in the Property as exempt under her homestead exemption and therefore, it is unavailable to pay those unsecured claims. Therefore, enforcing Pollock's secured claim against the Property does not affect the unsecured creditors.

Based upon the foregoing, cause exists to grant relief from the automatic stay to allow the Second Judicial District Court to enforce the Decree.

II. IN THE ALTERNATIVE, THIS COURT SHOULD ABSTAIN FROM ADJUDICATING POLLOCK'S PROPERTY RIGHTS WITH RESPECT TO THE PROPERTY

-7-

**LAW OFFICES OF AMY N. TIRRE**
3715 Lakeside Drive, Suite A
Reno, NV 89509
(775) 828-0909 Telephone
(775) 828-0914 Facsimile
E-mail: amy@amytirrelaw.com

In the alternative, Pollock requests that this Court abstain from adjudicating his rights and interest in the Property under 28 U.S.C. § 1334(c)(1). *See In re Titan Energy, Inc.* 837 F.2d 325, 330-34 (8th Cir. 1988) ("there is . . . discretion available to a bankruptcy court to require matters to be litigated in state courts even where jurisdiction exists in the bankruptcy court."). While the doctrine of permissive abstention applies to adversary proceedings, Pollock submits that it should apply to this contested matter related to his right and interest in the Property under 28 U.S.C. §157(b)(2)(K).

The circumstances under which a bankruptcy court should exercise its powers of discretionary abstention are found in 28 U.S.C. § 1334(c)(1). Section 1334(c)(1) provides as follows:

> Nothing in this section prevents a district court in the interest of justice or in the interest of comity with State courts or respect for the State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

The Ninth Circuit has summarized the factors a court should consider when deciding whether to abstain as follows:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*In re Tucson Estates, Inc.*, 912 F.2d 1162, 1167 (9th Cir. 1990) citing, *In re Republic Reader's Serv., Inc.,* 81 B.R. 422, 429 (Bankr.S.D.Tex.1987). Courts have held that no single factor is determinative. *In re Chapman,* 132 BR 153, 157-58 (Bankr N D Ill 1991) (discretionary

-8-

abstention appropriate when five factors present); *Williams v. Stefan,* 133 BR 119, 123 (Bankr. N D Ill 1991) (All factors need not be present for discretionary abstention to be proper.)  Rather, courts must consider each factor and the evidence relating thereto when deciding whether discretionary abstention is appropriate. *Id.*

First, abstention is appropriate because there is little to no impact upon the administration of the estate if abstention is granted.  Any equity in the Property is presumably exempt under Debtor's homestead exemption and if Pollock's secured interest in the Property is enforced, it does not reduce the payment to unsecured creditors.  In fact, if it is enforced, it increases the distribution to the unsecured creditors.

Second, state law issues predominate over bankruptcy issues.  The family court retained jurisdiction "over the property of the divorce to ensure that neither party is damaged . . . due to the bankruptcy of the other."  Exhibit 1 at 9; Section III(C).  Moreover, the Second Judicial District Court should be permitted to enforce its own Decree. *See Reusser v. Wachovia Bank, N.A.* 525 F3d 855, 859–861 (9th Cir. 2008) (noting that the *Rooker-Feldman* doctrine prohibits a federal district court from exercising jurisdiction of a suit that, in effect, constitutes a "de facto appeal" from a state court judgment—i.e., where "claims raised in the federal court action are inextricably intertwined with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules") (citations and internal quotations omitted).

Third, there is a family court action pending in the Second Judicial District Court so Pollock can return to that forum to obtain relief.

Fourth, there is no jurisdictional basis other than 28 U.S.C. §1334 for the adjudication of Pollock's right and interest in the Property to be before the bankruptcy court; the parties' rights in the Property were adjudicated by the family court and it should enforce its own order.

-9-

Fifth, the issue of Pollock's right and interest in the Property can be determined in state court and is unrelated to the bankruptcy case such that Debtor can proceed with pursuing her Chapter 13 plan.

Sixth, it is feasible to sever the determination of Pollock's right and interest in the Property by allowing the family court to make the appropriate orders to secure Pollock's interest in the Property while the issue of a subsequent foreclosure on the deed of trust would be subject to the enforcement of the bankruptcy court.

Seventh, this Court's docket is clearly full and it should not burdened by a family court matter.  Eighth, by filing this bankruptcy case, Debtor is seeking to take this matter from the family court, where it belongs, to the bankruptcy court and is indicative of forum shopping.

Based upon the foregoing, in the alternative, this Court should abstain from entering any order that impacts Pollock's right and interest in the Property so that the family court can enforce the Decree.

## CONCLUSION

This Court should grant relief from the automatic stay for cause to allow the Second Judicial District Court to enter any and all orders necessary to enforce the Decree and allow a deed of trust to be recorded against the Property to secure Pollock's interest.  11 U.S.C. §362(d)(1).  In the alternative, this Court should abstain from entering any orders that effect Pollock's right and interest in the Property.  28 U.S.C. §1334(c)(1).

DATED this June 21, 2011.

LAW OFFICES OF AMY N. TIRRE, APC

By: /s/ Amy N. Tirre
AMY N. TIRRE, ESQ.

Counsel for Joseph Pollock

-10-

**CERTIFICATE OF SERVICE**

Pursuant to FRBP 7005 and FRCP 5(b), I certify that I am an employee of Law Offices of Amy N. Tirre, that I am over the age of 18 and not a party to the above-referenced case, and that on June 21, 2011 I filed the **MOTION FOR RELIEF FROM THE AUTOMATIC STAY, OR, IN THE ALTERNATIVE, TO ABSTAIN** as indicated:

__ x __     **BY NOTICE OF ELECTRONIC FILING**: through Electronic Case Filing System of the United States Bankruptcy Court, District of Nevada, to the individuals and/or entities at their email addresses as set forth below:

- KEVIN A. DARBY    kevin@darbylawpractice.com, tricia@darbylawpractice.com;tyler@darbylawpractice.com;melissa@darbylawpractice.com;kelsey@darbylawpractice.com;kendal@darbylawpractice.com;beth@darbylawpractice.com;skylar@darbylawpractice.com
- WILLIAM A. VAN METER    c13ecf@nvbell.net, wvanmeter13@ecf.epiqsystems.com

_____     **BY HAND DELIVERY VIA COURIER**: by causing hand delivery of the Document listed above via Reno Carson Messenger Service to the persons at the addresses set forth below.

__ X __     **BY MAIL**: by placing the document listed above in a sealed envelope with Postage thereon fully prepaid in the United States Mail at Reno, Nevada, and addressed as set forth below. I am readily familiar with my office's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on 21 June 2011, with postage thereon fully prepaid in the ordinary course of business.

Margaret Ries
1401 Wesley Drive
Reno, NV  89503

DATED this June 21, 2011.

/s/ Andrea Black
An Employee of Law Offices of Amy N. Tirre

**LAW OFFICES OF AMY N. TIRRE**
3715 Lakeside Drive, Suite A
Reno, NV 89509
(775) 828-0909 Telephone
(775) 828-0914 Facsimile
E-mail: amy@amytirrelaw.com

-11-